This is an appeal from the June 11, 1998 judgment and order of the Court of Common Pleas of Mercer County, Probate Division regarding removal of assets from an estate.
Jessie L. Clay died testate on April 20, 1997, after languishing in a coma for six days. She was survived by four children: appellee Phyllis Hines, Joyce Borger, appellant Ron Piper, and appellant Diane Weaver. Mrs. Clay's Last Will and Testament was executed on July 23, 1996, and made provision for her estate to be divided equally between appellee Hines, appellant Piper and appellant Weaver. No provision was made for Borger, and she is not a party to this action. The will was admitted to probate on May 23, 1997, and appellants were named co-executors.
On October 30, 1997, appellee claimed exceptions to the will inventory that had been filed by appellants. A memorandum attached to the inventory indicated that approximately $104,000 of Jessie Clay's assets had been removed from the estate by the appellants in the week prior to her death, but after she had lapsed into a coma. On November 14, 1997, appellee filed a complaint seeking to remove appellants as co-executors of the Clay estate, damages under R.C. 2109.50 et seq., and injunctive relief to restore the assets to the estate. No answer was filed to the complaint.
The removal and distribution of the assets were pursuant to a power of attorney signed by Jessie Clay on February 14, 1992 in favor of appellant Weaver. While Clay was in a coma, appellant Weaver closed several of Clay's bank accounts, transferred one of Clay's motor vehicles to herself and another to appellant Piper, and cashed in several U.S. treasury bonds. Several of the bank accounts were payable-on-death accounts, payable to appellant Weaver. Although many of the bonds were payable to Jessie Clay alone, some were titled jointly to Jessie Clay and each of the four individual children. The proceeds from the bonds and several of the bank accounts were deposited into an account jointly held by appellants. However, the proceeds from two of the accounts were deposited into the estate account after Jessie Clay's death. Appellants also proceeded to remove most of Clay's household goods from her residence and either split the goods between them or sold them at a garage sale and split the proceeds of the sale.
Most of the property retained by appellants was listed in the memorandum attached to the estate inventory. Appellants do not dispute that the property is in their possession, nor do they dispute that the transfer of the property was accomplished pursuant to the power of attorney held by appellant Weaver. Rather, they claim that Jessie Clay orally told them to take the property if she lapsed into a coma. The probate court excluded proffered testimony on this point as hearsay. The court also excluded testimony that appellants claim supports a conclusion that Jessie Clay had planned to cut appellee out of her will, as well as statements made by appellee at Jessie Clay's funeral.
On June 16, 1998, the court filed a judgment entry containing detailed findings of fact and entered judgment against appellants, concluding that they had acted improperly. The court therefore ordered that appellants restore all of the challenged assets to the estate. The court further ordered appellants to pay a ten percent penalty for concealing assets under R.C. 2109.52, and ordered that the penalty should be "for the benefit of Hines." The court also removed appellants as co-executors, and assessed all costs and attorney fees associated with appellee's action to appellants. Appellants now assert the following seven assignments of error with the trial court's judgment:
 The court erred in proceeding to judgment, in all respects of that judgment, without complying with the procedural mandates of R.C. 2109.50 and R.C. 2109.52.
 The court erred by failing to find the co-executor[s] "not guilty" and by failing to dismiss the complaint brought pursuant to R.C. 2109.50 and R.C. 2109.52.
 The court erred in excluding testimony offered by the co-executors regarding Jessie Clay's instructions and intent for the disposition of her property.
 Court erred [sic] in excluding the testimony of Katie Hayes regarding a conversation with Phyllis Hines at Jessie Clay's funeral.
 Court erred [sic] in ordering that the ten percent penalty against Piper and Weaver, pursuant to R.C. 2109.52, shall be for the benefit of [H]ines.
 The court erred in awarding attorney fees to Hines.
 The court erred in finding that the p.o.d.s [sic] closed out by Diane Weaver became estate assets.
Appellants' first, second, fifth and sixth assignments of error assert that the trial court failed to properly comply with the dictates of R.C. 2109.50 et seq., which establish and control proceedings regarding assets concealed or embezzled from an estate. We will address those assignments first.
Appellants' first assignment of error actually argues two points: 1) that the court failed to serve upon them a "citation, attachment or warrant" and that the court's failure to do so renders the proceedings a nullity, and 2) that R.C.2109.50 requires the court to make an express finding of "guilty" or "not guilty," and the court's failure to make this finding precluded it from ordering sanctions. As to the first point, appellants fail to cite to any cases which favor their contention and instead rely solely on the text of R.C. 2109.50, which reads in pertinent part:
 Upon complaint made to the probate court of the county having jurisdiction of the administration of a trust estate or of the county wherein a person resides against whom the complaint is made, by a person interested in such trust estate * * * against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys, chattels, or choses in action of such estate, said court shall by citation, attachment or warrant, or, if circumstances require it, by warrant or attachment in the first instance, compel the person or persons so suspected to forthwith appear before it to be examined, on oath, touching the matter of the complaint.
(Emphasis added.) Appellants contend that the emphasized language should be construed strictly to require that the court may proceed only when it has "compel[led]" the presence of the "person suspected" by means of citation, attachment or warrant. Appellants argue that the proceedings in this case were invalid because they appeared voluntarily rather than being compelled to appear by one of the three means enumerated in the statutory text.
Although appellants' brief is not entirely clear, they seem to argue either that R.C. 2109.50 confers a right to be compelled to appear prior to proceedings under that statute, or alternatively that the court is required to compel appearance to establish subject-matter jurisdiction over a R.C. 2109.50
action. Even assuming that appellants' first argument is a viable reading of the statute, appellants can identify no prejudice as a result of the court's failure to compel their appearance in this case so long as the court had jurisdiction to proceed. Thus, we will address only appellants' argument that compelled appearance is required for a court to have subject matter jurisdiction over proceedings under R.C.2109.50. R.C. 2101.24(A)(1)(m) provides that "[e]xcept as otherwise provided by law, the probate court has exclusive jurisdiction * * * [t]o direct and control the conduct of fiduciaries and settle their accounts." Appellants' apparent argument is that the general assembly has exempted R.C. 2109.50
from this rule.
We believe that if the general assembly had intended to create an exception to this general rule for proceedings under R.C. 2109.50, it certainly would have made some mention that it was doing so. Appellants do not point us to and we have been unable to find any such indication in the appropriate statutes. Additionally, we observe that the text of R.C. 2101.24(A)(1)(m) specifically grants jurisdiction to probate courts tocontrol the conduct of fiduciaries and to settle fiduciary accounts, the very actions which the trial court took in this instance. Thus, we conclude that the probate court was not required to compel appellants' appearance in order to maintain jurisdiction under R.C. 2109.50.
Appellants' first assignment of error also asserts that R.C.2109.52 requires the trial court to make an express finding of either "guilty" or "not guilty," and that the trial court's failure to make such a finding in this case rendered it without jurisdiction to make further orders. Appellant cites In reBlack's Estate (1945), 145 Ohio St. 405, paragraph three of the syllabus, for this proposition:
 In a proceeding under [R.C. 2109.50 et seq.], a finding of guilty or not guilty is required with the imposition of a penalty upon a finding of guilt, and the statutes should not be extended by implication beyond their manifest purpose, to reach persons or matters not covered by the descriptive terms of the statute.
Appellants contend that this rule of law requires that the trial court actually use the word "guilty" prior to assessing a penalty. Here, by contrast, appellants contend that the court never "found" them "guilty." Instead the court quoted R.C. 2109-52, and determined that appellants "deliberately removed property owned by the Clay estate and have refused to return the property or include the property as part of the estate inventory." R.C. 2109.52 provides, in pertinent part:
 When passing on a complaint made under section 2109.50 of the Revised Code, the probate court shall determine * * * whether the person accused is guilty of having concealed, embezzled, conveyed away, or been in the possession of money, chattels, or choses in action of the trust estate. * * * * If the person found guilty is the fiduciary, the probate court shall forthwith render judgment in favor of the state against him for such amount or value, together with penalty and costs as provided in this section.
We observe that R.C. 2109.52 specifically states that the section only applies upon a finding of "guilty." In this case, the court quoted the section (including the language requiring a finding of guilt), concluded that appellants had acted deliberately, and proceeded to assess penalties in accordance with the section. Under these circumstances, it is clear that the court did indeed find appellants guilty of conduct proscribed under R.C. 2109.50, and thus substantially complied with requirements of R.C. 2109.52. Appellants' argument is therefore without merit, and appellants' first assignment of error is overruled.
Appellants' second assignment asserts that the trial court should have found them "not guilty," since all of the actions complained of took place prior to the death of Jessie Clay. Specifically, appellants contend that actions taken before the death of the decedent are legally insufficient to sustain a finding of guilty under R.C. 2109.52, and also that because the removal of funds from the estate was accomplished by appellant Weaver pursuant to her power of attorney rather than in her role as executor the statute does not apply. In support of this argument, appellants cite Ukrainiec v. Batz (1982), 24 Ohio App.3d 200. In that case, the defendant took full possession of certain joint bank accounts titled to both her and her father nine months prior to her father's death. She retained the accounts after his death, claiming that her father had given them to her as a gift. The trial court found that she had a mistaken good faith belief that her father had given her the funds and found her not guilty of concealment under R.C.2109.50. That decision was affirmed on appeal.[1]
As should be evident, this case actually argues against appellants' contention. The reasoning of Ukrainiec presumes that conduct prior to the decedent's death can be the subject of an action under R.C. 2109.50 so long as the funds obtained by that conduct are retained after the death, as they were here. We therefore reject this argument and overrule appellants' second assignment of error.
Appellants' fifth assignment of error asserts that the trial court erred by ordering that the mandatory ten percent penalty assessed under R.C. 2109.52 be "for the benefit of [appellee] Hines." Appellants argue that the statute commands that the penalty is "by judgment to be in favor of the State of Ohio." Appellants point to the statutory text, which reads in pertinent part:
 If the person found guilty is the fiduciary, the probate court shall forthwith render judgment in favor of the state against him for such amount or value, together with penalty and costs as provided in this section.
While the quoted language does require that the judgment must be entered in favor of the state, proceedings under R.C.2109.50 et seq. are not adversarial, but are legally "brought" by the state on behalf an estate. Thus, entering judgment "in favor of the state" in such proceedings means that the judgment recovered and any fine assessed under R.C. 2109.52 is for the benefit of the decedent's estate, rather than the state of Ohio as appellants argue. Cf. In Re Walden's Estate (1965), 6 Ohio Misc. 214,216. It was therefore within the probate court's discretion to award the ten percent penalty to appellee, since she was the only other beneficiary of the estate:
 [I]t is certainly not appropriate for [appellants] Weaver and [Piper] to pay a penalty and then have two-thirds returned to them. Therefore the Court ORDERS that all penalties shall be for the benefit of [appellee] Hines.
We find no error with this rationale, and agree with appellee that awarding the penalty to her furthers the statutory purposes of R.C. 2109.50 et seq. Accordingly, we overrule appellants' fifth assignment of error.
Appellants' sixth assignment argues that the court failed to find that they had acted in bad faith, and thus erred when it awarded attorney fees to appellee. Appellants cite Sexton v.Jude (Sept. 7, 1994), Montgomery App. No. CA 14227, unreported, for the proposition that bad faith is required.
We believe that Sexton is easily distinguished. In that case, the court reversed a trial court's award of a ten percent penalty and attorney fees under R.C. 2109.50 because no hearing had ever been held and no finding of guilt had ever been made. We observe that, unlike Sexton, there was indeed a hearing below at which appellants were present, participated and presented evidence. Additionally, we have already determined appellants were indeed effectively adjudged guilty. Moreover, a correct reading of Sexton actually supports an award of attorney fees in this case:
 The probate court in this instance did not find Jude guilty of concealing or embezzling estate assets, as it was required to do by R.C. 2109.50 and R.C. 2109.52. However, had the finding been made, the court would have had the authority to allow recovery of the attorney fees spent pursuing Jude * * *.
Id. at *13. Appellants' sixth assignment of error is therefore overruled.
Appellants' third and fourth assignments of error address evidentiary concerns. The third assignment asserts that the court should have allowed hearsay evidence of Jessie Clay's intent for the disposition of her property. Appellants argue that such statements are admissible under Evid.R. 804(B)(5):
 (B) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 (5) Statement by a deceased or incompetent person. The statement was made by a decedent or a mentally incompetent person, where (a) the estate or personal representative of the decedent's estate, or the guardian or trustee of the incompetent person is a party, and (b) the statement was made before the death or development of the incompetency, and (c) the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent or incompetent person.
Appellants argue that the statements of Jessie Clay to Ron Piper, Diane Weaver and Sue Stetler as to Ms. Clay's intent for her property are admissible under Evid.R. 804(B)(5)(c), because they are "offered to rebut testimony by an adverse party." The "testimony" to which appellants then point is Jessie Clay's will.
We are initially doubtful that the decedent's will is "testimony" within the meaning of Evid.R. 804(B)(5)(c),[2] but even if we accept that argument, the court correctly excluded the offered statements. It is axiomatic that a testator's intention must be established solely from the terms of a will, unless the language used in the will creates doubt as to its meaning. Oliver v. Bank One, Dayton, N.A. (1991), 60 Ohio St.3d 32, paragraph one of the syllabus. Here, appellants argue that they are not offering the statements to contest the terms of her will, but rather as evidence of Jessie Clay's intentions in case she were to lapse in to a coma (as she did). However, statements offered under Evid.R. 804(B)(5) can only be admissible hearsay to rebut testimony by an adverse party. The only testimony appellants point to is the will itself, which does not and cannot purport to establish Jessie Clay's intent for the disposition of her property while she was comatose. Moreover, appellants' counsel's questioning of these witnesses focused on appellants' contention that Jessie Clay "intended to see that Phyllis Hines did not receive any of her [Clay's] property upon her death." The proceeding below was not a will contest, and we fail to see how such questioning can be fairly characterized as relating to Jessie Clay's fears about lapsing into a coma. Testimony as to Jessie Clay's testamentary intent is not only hearsay, but also irrelevant and inadmissible.
Only Appellant Diane Weaver offered testimony that directly addressed appellants' contention that Jessie Clay had directed their actions:
 Q: What was the reason that you cashed the assets that you did on April the 15th?
 MR. VON MEISTER: Is this a proffer?
 THE COURT: He said it was a proffer.
 MR. WILSON: It's a proffer.
 A: Because on many occasions my mother gave me those instructions on what I was to do and I followed those.
 Q: What were the instructions?
 A: She said to liquidate any cash, CDs, bonds, anything that she had before her death if possible if she went into a coma or something like this and to split them with my brother and to make sure that Phyllis did not receive any of them.
 Q: Is that the same reason or motivation that you transferred the titles to the automobiles?
 A: Yes.
 Q: Took the household goods?
 A: Yes.
Admission or rejection of evidence is within the sound discretion of the trial court, and we will not overturn a trial court's decision unless that discretion is abused. See,e.g., Columbus v. Taylor (1988), 39 Ohio St.3d 162, 164-65, citing Calderon v. Sharkey (1982), 70 Ohio St.2d 218. We agree with the trial court's conclusion that the offered statements are inadmissible hearsay if offered to establish her intentions regarding the possibility of a coma, since the only evidence they are ostensibly offered to rebut did not deal with that issue. We therefore find no abuse of discretion and overrule appellants' third assignment of error.
Appellants' fourth assignment of error asserts that the court erred by excluding testimony of Katie Hayes regarding a hearsay remark made by the appellee at Jessie Clay's funeral. The substance of the statement was that appellee was happy that her mother was dead and that if the preacher said anything nice about Jessie Clay that appellee would walk out of the funeral. Because the proceedings below dealt with appellants' conduct rather than appellee's relationship with the decedent, the court concluded that the testimony was irrelevant. Our review of the offered testimony indicates that the trial court's exclusion of that testimony was well founded, and we agree with its decision. Evid.R. 402. We can find no abuse of discretion and therefore overrule this assignment of error.
Finally, appellants' seventh assignment of error asserts that the trial court erred by concluding that when appellant Weaver closed out Jessie Clay's payable-on-death bank accounts, that the proceeds of those accounts became estate assets. Appellant Weaver closed out the accounts after Jessie Clay had become comatose but before her death, pursuant to a power of attorney. The trial court described its reasoning in reaching the conclusion that the proceeds of the accounts had become estate assets:
 The irony of this case is that Weaver was a POD beneficiary on several of the accounts and would have received the accounts after death pursuant to the terms of the POD. But upon her cashing of the accounts she converted all of the money into a trust relationship with [the] rightful owner (Clay) and terminated the POD relationship.
R.C. 2131.10, which deals with POD accounts, states in pertinent part:
 Every contract of [a] * * * deposit * * * authorized by this section shall be deemed to contain a right on the part of the owner during his lifetime both to withdraw the proceeds of such * * * deposit * * * in whole or in part, as though no beneficiary has been named, and to designate a change in beneficiary. The interest of the beneficiary shall be deemed not to vest until the death of the owner.
(Emphasis added.) Based on the foregoing statutory language, we believe that the trial court's reasoning was correct. Because the accounts were terminated prior to Ms. Clay's death, the account proceeds became her personal property and thus part of her estate upon her death. The import of the statute is clear: appellant Weaver's interest in the proceeds of the accounts could not vest until the death of Jessie Clay. Because the accounts we terminated prior to Ms. Clay's death, appellant's interest never became vested. Appellants' seventh assignment of error is overruled.
For the foregoing reasons, the judgment of the Common Pleas Court of Mercer County, Probate Division is affirmed.
 JUDGMENT AFFIRMED.
Bryant and Hadley, JJ., concur.
[1] We respectfully disagree with the Ukrainiec court's apparent conclusion that good faith possession is always a defense to a charge of concealment under R.C. 2109.50. It is well settled law in Ohio that scienter is not an essential element of a cause of action under the concealment statute and that a finding of guilt under R.C. 2109.52 does not require fraudulent or criminal intent. See, e.g., In Re Estate of Popp (1994),94 Ohio App.3d 640, 647; State ex rel. Snearer v. Packer (1935), 4 O.O. 347; Lindquist v. Hayes (1926), 22 Ohio App. 141. Appellants' insistence that "mere possession of a claimed estate asset, under a good faith claim to right of possession" cannot be the subject of a concealment proceeding is therefore incorrect.
[2] We observe that the staff notes to the provision indicate that the rule was adopted in response to the modification of R.C.2317.03 (the Dead Man's statute) by the adoption of Evid.R. 601. Evid.R. 804(B)(5), staff note. It therefore seems that appellants' construction of the rule is far afield from the purposes for which it was adopted. However, the peculiar facts of this case make it unnecessary to directly address the question of whether Evid.R. 804(B)(5) was intended to apply to hearsay statements challenging the clear terms of a valid will.